# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

GARY W. LINAWEAVER,     )
            )
     **Plaintiff,**   )
            )  **CIVIL ACTION**
**v.**           )
            )  **No. 10-2621-JWL**
            )
MICHAEL J. ASTRUE,    )
**Commissioner of Social Security,** )
            )
     **Defendant.**  )
_____ )

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security
(hereinafter Commissioner) denying disability insurance benefits (DIB)[1] under sections
216(i) and 223 of the Social Security Act. 42 U.S.C. §§ 416(i) and 423 (hereinafter the
Act). Finding error in the Commissioner's failure to discuss the treatment notes of
Plaintiff's chiropractor, Dr. Pfrimmer, the court ORDERS that the decision is
REVERSED, and that judgment shall be entered pursuant to the fourth sentence of 42
U.S.C. § 405(g) REMANDING the case for further proceedings.

## I. Background

---

[1]The record indicates Plaintiff also applied for Supplemental Security Income. (R.
99-101). The ALJ's decision did not address that application, and Plaintiff does not
allege error in that regard. Therefore, the court has not considered the issue.

Plaintiff applied for DIB on January 17, 2007, alleging disability beginning July 7, 2006.  (R. 30, 93-98).  The application was denied initially and upon reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge (ALJ).  (R. 30, 25-26, 52-53).  Plaintiff's request was granted, and Plaintiff appeared with counsel for a video hearing before ALJ Mark R. Dawson on May 14, 2009.  (R. 30, 7, 8).  At the hearing testimony was taken from Plaintiff and from a vocational expert.  (R. 30, 7-24).

On June 19, 2009, ALJ Dawson issued a five-page decision finding in relevant part that Plaintiff's allegations of symptoms are not credible, and according "great weight" to the disability determination service consultant's opinion that Plaintiff is capable of doing a full range of light work.  (R. 30-34).  He decided that Plaintiff is able to perform his past relevant work as an insurance agent/representative both as he performed it, and as it is generally performed.  (R. 34).  Therefore, he decided that Plaintiff is not disabled within the meaning of the Act, and denied the application.  Id.

Plaintiff sought Appeals Council review of the ALJ's decision, but his request was denied.  (R. 1-6, 167-69).  Therefore, the ALJ's decision is the final decision of the Commissioner.  (R. 1); Blea v. Barnhart, 466 F.3d 903, 908 (10th Cir. 2006).  Plaintiff now seeks judicial review.  (Doc. 1).

## II.    Legal Standard

The court's jurisdiction and review are guided by the Act.  Weinberger v. Salfi, 422 U.S. 749, 763 (1975) (citing 42 U.S.C. § 405(g)); Wall v. Astrue, 561 F.3d 1048,

2

1052 (10th Cir. 2009) (same); Brandtner v. Dep't of Health and Human Servs., 150 F.3d

1306, 1307 (10th Cir. 1998) (sole jurisdictional basis in social security cases is 42 U.S.C.

§ 405(g)).  Section 405(g) of the Act provides for review of a final decision of the

Commissioner made after a hearing in which the Plaintiff was a party.  It also provides

that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by

substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  The court must determine

whether the factual findings are supported by substantial evidence in the record and

whether the ALJ applied the correct legal standard.  Lax v. Astrue, 489 F.3d 1080, 1084

(10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).

Substantial evidence is more than a scintilla, but is less than a preponderance; it is such

evidence as a reasonable mind might accept to support a conclusion.  Wall, 561 F.3d at

1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).  The court may "neither

reweigh the evidence nor substitute [its] judgment for that of the agency."  Bowman v.

Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health &

Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395

F.3d 1168, 1172 (10th Cir. 2005).  Whether substantial evidence supports the

Commissioner's decision is not simply a quantitative exercise, for evidence is not

substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion.

Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

3

An individual is under a disability only if that individual can establish that he has a physical or mental impairment which prevents him from engaging in any substantial gainful activity, and which is expected to result in death or to last for a continuous period of at least twelve months. Thompson v. Sullivan, 987 F.2d 1482, 1486 (10th Cir. 1993) (citing 42 U.S.C. § 423(d)); see also, Knipe v. Heckler, 755 F.2d 141, 145 (10th Cir. 1985) (quoting identical definitions of a disabled individual from both 42 U.S.C. §§ 423(d)(1) and 1382c(a)(3)(A)); accord, Lax, 489 F.3d at 1084 (citing 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A)). The claimant's impairments must be of such severity that he is not only unable to perform his past relevant work, but cannot, considering his age, education, and work experience, engage in any other substantial gainful work existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner uses a five-step sequential process to evaluate disability. 20 C.F.R. § 404.1520 (2009); Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether he has a severe impairment, and whether the severity of his impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).

Williams, 844 F.2d at 750-51.  If claimant's impairment(s) does not meet or equal a listed impairment, the Commissioner assesses claimant's residual functional capacity (RFC).  20 C.F.R. § 404.1520(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

After assessing claimant's RFC, the Commissioner evaluates steps four and five-- whether claimant can perform his past relevant work, and whether, when considering vocational factors of age, education, and work experience, claimant is able to perform other work in the economy.  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one through four the burden is on claimant to prove a disability that prevents performance of past relevant work.  Blea, 466 F.3d at 907; accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.  At step five, the burden shifts to the Commissioner to show jobs existing in the economy which are within Plaintiff's capability.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

Plaintiff makes four distinct claims of error in the ALJ's decision.  First, he claims that the ALJ failed to evaluate the medical evidence properly when he failed to consider or discuss Dr. Pfrimmer's treatment notes, including:  his diagnoses of cervical/brachial syndrome, thoracic pain, and vertigo, his statement that x-rays show degenerative joint disease in the cervical spine, and his opinion "that Linaweaver had 'cervical nerve root compression positive on the left producing severe pain with radiation into the left shoulder.'"  (Pl. Br. 4).  He argues that as a result of these errors the ALJ erroneously

5

determined that Plaintiff's neck problems and left upper extremity problems were not severe.  (Pl. Br. 2).  In "Proposition II" of his brief, Plaintiff claims both that the physical RFC limitations assessed by the ALJ are not supported by the record evidence, and that in deciding that Plaintiff could return to his past relevant work, the ALJ failed to follow the three-phase analysis required by Winfrey v. Chater, 92 F.3d 1017, 1024-25 (10th Cir. 1996).  (Pl. Br. 8-12).  Finally, Plaintiff claims error in the ALJ's credibility determination.  (Pl. Br. 12-15).

The Commissioner argues that the ALJ properly considered the severity of Plaintiff's impairments, and properly did not consider Dr. Pfrimmer's diagnoses to establish medically determinable impairments, because Dr. Pfrimmer is a chiropractor, a chiropractor is not an acceptable medical source, and the regulations provide that only evidence from an acceptable medical source may be used to establish a medically determinable impairment.  (Comm'r Br. 8-10).  He argues that the ALJ properly analyzed the credibility of Plaintiff's allegations of symptoms, and that substantial record evidence supports his credibility determination.  (Comm'r Br. 10-14).  Finally, the Commissioner argues that the ALJ "effectively made" the analysis mandated by Winfrey, and that substantial record evidence supports the ALJ's step four finding that Plaintiff can perform his past relevant work as an insurance agent/representative.  (Comm'r Br. 14-16).

The court finds that remand is necessary because the ALJ did not discuss the treatment notes and the "other" medical source opinions of Dr. Pfrimmer.  Because a

proper consideration of the notes and opinions of Dr. Pfrimmer on remand may affect the credibility determination, the RFC assessment, and the step four evaluation, the court will not attempt to offer an advisory opinion on those matters.  Saterlee v. Astrue, No. 11-5054, slip op., 2011 WL 6145399 (10th Cir. Dec. 12, 2011) ("Issues regarding the ALJ's extant credibility analysis may well be obviated by proceedings on remand, and we elect not to issue an advisory opinion on such matters.").

## III.   Evaluation of Dr. Pfrimmer's Diagnoses, Treatment Notes, and Opinions

As discussed above, Plaintiff claims that the ALJ failed to evaluate the medical evidence properly when he failed to consider or discuss Dr. Pfrimmer's treatment notes, including:  his diagnoses of cervical/brachial syndrome, thoracic pain, and vertigo, his statement that x-rays show degenerative joint disease in the cervical spine; and his opinion "that Linaweaver had 'cervical nerve root compression positive on the left producing severe pain with radiation into the left shoulder.'"  (Pl. Br. 4).  Plaintiff also argues that as a result of these errors, the ALJ erroneously determined that Plaintiff's neck problems and left upper extremity problems were not severe.  (Pl. Br. 2).

The Commissioner focused on Plaintiff's statements that "the ALJ did not properly evaluate the medical evidence when determining [Plaintiff's] severe impairments" (Pl. Br. 2) (emphasis added), and that "the ALJ erred by finding that [Plaintiff's] neck and left upper extremity problems were non-severe," id. (emphasis added), and in his response, he treated Plaintiff's entire argument as an assertion that the ALJ erred in not finding

additional severe impairments based upon Dr. Pfrimmer's diagnoses, treatment notes, and opinions.  Therefore, as noted above, the Commissioner argued that the ALJ properly considered the severity of Plaintiff's impairments, and properly did not consider Dr. Pfrimmer's diagnoses to establish medically determinable impairments, because Dr. Pfrimmer is a chiropractor, a chiropractor is not an acceptable medical source, and the regulations provide that only evidence from an acceptable medical source may be used to establish a medically determinable impairment.  (Comm'r Br. 8-10).  The Commissioner's argument correctly applies the law regarding the consideration of medically determinable impairments, but it ignores the substance of Plaintiff's allegation of error, especially in light of the exceedingly terse consideration contained in the Commissioner's decision.

Although Plaintiff clearly included an argument that the ALJ should have found that Plaintiff has severe impairments of his neck and left upper extremity, the substance of his entire argument was that the ALJ failed to adequately consider Dr. Pfrimmer's diagnoses, treatment notes, and opinions.  He argued that "the ALJ did not properly evaluate the medical evidence" (Pl. Br. 2); that "the ALJ failed to evaluate the evidence concerning [Plaintiff's] physical impairments properly" (Pl. Br. 3); that "the ALJ failed properly to evaluate Dr. Pfrimmer's opinions concerning Linaweaver's impairments" (Pl. Br. 4); that Social Security Ruling (SSR) 06-03p provides the proper framework for evaluating the opinions of "other" medical sources, such as Dr. Pfrimmer, who are not

"acceptable medical sources," id.; that "[t]he ALJ should have 'consider[ed] and discuss[ed] evidence from Dr. Pfrimmer when determining the severity of [Plaintiff's] impairments and his functional limitations," id.; and that "[t]he ALJ provided no analysis of Dr. Pfrimmer's treatment notes."  Id.  Thereafter, Plaintiff summarized what he considers to be certain specific diagnoses, statements, and opinions of Dr. Pfrimmer which were ignored by the ALJ, and in the three pages explained how in his view Dr. Pfrimmer's treatment notes should have been considered.  (Pl. Br. 5-7).  He summarizes his discussion by asserting that the ALJ "ignored Dr. Pfrimmer's opinions and findings" (Pl. Br. 7) and relied solely on the non-examining, non-treating State agency physicians' assessments (Pl. Br. 8); and that "[t]he ALJ's analysis of the medical evidence as a whole did not follow correct legal standards and is not supported by substantial evidence."  (Pl. Br. 8).  While the Commissioner's argument is correct in so far as it goes, the court's summary of Plaintiff's argument reveals that the Commissioner did not address the substance of Plaintiff's allegation that the ALJ erroneously considered the medical evidence.  The court will now address that allegation.

## A.    Evaluating Medical Evidence

"Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s) including [claimant's] symptoms, diagnosis and prognosis."  20 C.F.R. § 404.1527(a)(2).  Unless a treating source opinion is given controlling weight,

<u>all</u> medical opinions will be evaluated by the Commissioner in accordance with factors

contained in the regulations.  <u>Id.</u> § 404.1527(d); SSR 96-5p, West's Soc. Sec. Reporting

Serv., Rulings 123-24 (Supp. 2011).  Those factors are:  (1) length of treatment

relationship and frequency of examination; (2) the nature and extent of the treatment

relationship, including the treatment provided and the kind of examination or testing

performed; (3) the degree to which the physician's opinion is supported by relevant

evidence; (4) consistency between the opinion and the record as a whole; (5) whether or

not the physician is a specialist in the area upon which an opinion is rendered; and

(6) other factors brought to the ALJ's attention which tend to support or contradict the

opinion.  20 C.F.R. § 404.1527(d)(2-6); <u>Watkins v. Barnhart</u>, 350 F.3d 1297, 1301 (10th

Cir. 2003); <u>Drapeau v. Massanari</u>, 255 F.3d 1211, 1213 (10th Cir. 2001).

Recognizing the reality that an increasing number of claimants have their medical

care provided by health care providers who are not "acceptable medical sources"--nurse

practitioners, physician's assistants, social workers, chiropractors, and therapists--the

Commissioner provided SSR 06-3p.  West's Soc. Sec. Reporting Serv., Rulings 327-34

(Supp. 2011).  In that Ruling, the Commissioner noted:

> With the growth of managed health care in recent years and the emphasis on
> containing medical costs, medical sources who are not "acceptable medical
> sources," such as nurse practitioners, physician assistants, and licensed
> clinical social workers, have increasingly assumed a greater percentage of
> the treatment and evaluation functions previously handled primarily by
> physicians and psychologists.  Opinions from these medical sources, who
> are not technically deemed "acceptable medical sources" under our rules,
> are important and should be <u>evaluated on key issues such as impairment</u>

severity and functional effects, along with the other relevant evidence in the file.

Id., Rulings, 330-31 (emphasis added).

The Ruling notes that the distinction between "acceptable medical sources" and other health care providers who are not "acceptable medical sources" is necessary because (1) evidence from an "acceptable medical source" is necessary to establish the existence of a medically determinable impairment, (2) only "acceptable medical sources" can provide "medical opinions," and (3) only "acceptable medical sources" can be considered "treating sources" whose medical opinion might be worthy of "controlling weight." Id., Rulings, 329. The Ruling explains that "other" medical source opinions will be evaluated using the same regulatory factors used in evaluating medical opinions; id. at 331-32(citing 20 C.F.R. §§ 404.1527, 416.927); and that the ALJ "generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the . . . decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." Id. at 333; see also Frantz v. Astrue, 509 F.3d 1299, 1302 (10th Cir. 2007) (remanding for consideration of a nurse-practitioner's opinions in light of SSR 06-3p).

**B.     The ALJ's Evaluation of Medical Evidence**

The five-page opinion in this case is so terse as to be little more than a recitation of boilerplate language regarding the applicable legal standards (which the court recognizes

11

from almost all decisions which the court reviews) combined with statements of the

ALJ's conclusory findings at each step of the five step evaluation process.  To illustrate

the inadequacy of the ALJ's summary of the evidence and of the rationale supporting his

findings, the court quotes the entirety of the ALJ's discussion of his RFC assessment,

omitting the first three paragraphs which the court recognizes as boilerplate introducing

the RFC discussion in almost every decision this court has reviewed in more that a year:

> The claimant alleges that although he has worked in his insurance office
> since the mid 1970's, injuries from a prior accident prevents [sic] him from
> doing work above his head, causes [sic] his hands to continue to have
> tremors and feel numb and adversely affects [sic] his ability to walk,
> although he stated that he can walk but it is with some difficulty.  The
> claimant alleges that the numbness he feels in his hands prevents him from
> gripping and lifting objects but that his has no problem sitting.
>
> The claimant further alleged that after age 50, he noticed that cold weather
> makes it more difficult for him to walk, such that he need [sic] to hold on to
> the side of a building to walk, which prevented him from doing "outside
> calls" anymore, and that he is no longer able to fully straighten his legs
> when he walks.  He also alleged that if he walks more than 1-2 blocks, his
> legs begin to cramp and pain moves up his legs to his lower back area and
> that he has to rest and that he is unable to squat.
>
> After careful consideration of the evidence, the undersigned finds that the
> claimant's medically determinable impairment could reasonably be
> expected to cause the alleged symptoms; however, the claimant's statements
> concerning the intensity, persistence and limiting effects of these symptoms
> are not credible to the extent they are inconsistent with the above residual
> functional capacity assessment.
>
> In terms of the claimant's alleged exertional limitations, the undersigned
> finds that while his alleged back pain is credible, as it is documented by x-
> rays and symptoms, the objective medical evidence of record does not
> support the alleged severity in his back or his legs.  (Exhibit 1F and 7F).
> The claimant's alleged shaking in his arms and his legs were not observed

by a medical provider or otherwise documented in the medical evidence of record.  The undersigned further notes that the claimant acknowledge[s] that he has not [sic] problem sitting and so determines that the claimant is capable of sitting for 2 hours in an 8 hour workday a[s] required by the light exertional level assigned in his residual functional capacity.

As for the opinion evidence, the undersigned finds that great weight should be placed in the disability determination service consultant's review of the claimant's allegations and medical evidence, who determined that the claimant was capable of doing work at a full range of light work.

In sum, the above residual functional capacity assessment is supported by the evidence of record considered in its entirety.

(R. 33-34).

As is immediately obvious from even the most casual reading of the decision, the ALJ summarized none of the medical evidence in this case.  He cited Exhibits 1F and 7F both in his step three analysis (R. 32) ("the medical evidence does not meet the level of severity required by any listing in [Appendix 1, Section 1.00].  (Exhibit 1F and 7F)") and in his RFC assessment as quoted above.  But in neither instance did the ALJ summarize in even the most elementary way the substance of the exhibits cited.  Therefore it is left for the claimant, and for any court reviewing the decision, to weigh the exhibits, to divine the portion of the exhibits cited which supports the proposition asserted by the ALJ in each instance, and to determine whether there is contrary evidence which would detract from or negate the proposition asserted by the ALJ.  An administrative agency must give reasons for its decisions.  Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995) (quoting Reyes v. Bowen, 845 F.2d 242, 244 (10th Cir. 1988)).  That simply did not happen here.

13

Moreover, in neither instance in which the ALJ cited the medical exhibits was he actually considering the impact of that exhibit on Plaintiff's RFC or on the determination of disability.  Rather, in one instance he was considering whether the criteria of a group of Listings were met, and in the other he was considering whether the medical evidence supports the credibility of Plaintiff's allegations of symptoms in his back and legs.  (R. 32, 33-34).  Thus, the decision is without any summary of the medical evidence and without any explanation how the evidence supports the ALJ's finding that Plaintiff has the RFC to perform the full range of light work.

As quoted above, the ALJ stated his finding that "great weight" should be accorded to the RFC assessment of the state agency consultant, but he did not explain why he reached that determination.  With regard to Dr. Pfrimmer, the ALJ did not mention him by name or by reference.  He did not specifically recognize that Dr. Pfrimmer provided any opinion with regard to Plaintiff's impairments or with regard to the severity or functional effects of the impairments on Plaintiff's capabilities.  He did not assign or withhold any weight to Dr. Pfrimmer's opinions, and he did not explain why he decided that the state agency consultant's opinion is worthy of greater weight than whatever unknown weight was accorded to Dr. Pfrimmer's opinions.  Although the diagnoses of a chiropractor such as Dr. Pfrimmer may not be used to establish that a claimant has a medically determinable impairment, SSR 06-03p requires that his treatment notes and opinions must be weigh and evaluated on issues such as impairment

14

severity and functional effects along with evidence provided by other medical sources such as the physician who performed a consultative examination in this case and the state agency consultant.  There is no indication the ALJ did so here, and there is certainly no discussion of such relative weighing, even if the ALJ did it.  Remand is necessary for the Commissioner to evaluate the medical evidence properly, especially the treatment notes of Dr. Pfrimmer.

The court notes one additional ambiguity which the Commissioner should address on remand.  The ALJ found that Plaintiff "has the residual functional capacity to perform the full range of light work as defined in 20 CFR 404.1567(b)."  (R. 33).  The regulation cited by the ALJ states that a job is in the light exertional "category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls."  20 C.F.R. § 404.1567(b).  A full range of light work is usually considered to require the ability to sit about six hours in a workday, and also to stand and/or walk about six hours in a workday.  (R. 179) (RFC assessment finding ability to sit about six hours in an eight-hour workday, and ability to stand and/or walk about six hours in a workday) (affirmed as written by Dr. Legler (R. 190)) (characterized by the ALJ as "capable of doing work at a full range of light work" (R. 34)).  However, as quoted by the court above, the ALJ also stated that Plaintiff is "capable of <u>sitting for 2 hours in an 8 hour workday</u> a[s] required by the light exertional

level assigned." (R. 34).  This ambiguity in Plaintiff's ability to sit during an eight-hour workday should be clarified on remand.

**IT IS THEREFORE ORDERED** that the decision of the Commissioner is REVERSED, and that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) REMANDING the case for further proceedings consistent with this opinion.

Dated this 15th  day of December 2011, at Kansas City, Kansas.


s:/ John W. Lungstrum_____
**John W. Lungstrum**
**United States District Judge**